Edward Allan Buck, Pro se
P.O. Box 711908
Salt Lake City, UT

FILED
U.S. DISTRICT COURT

2013 NOV -7  A 9: 51

DISTRICT OF UTAH

DEPUTY CLERK

RECEIVED CLERK
OCT 2 2 2013
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH -- CENTRAL DIVISION

| | |
|---|---|
| EDWARD ALLAN BUCK | **Complaint for Relief**: |
| **Plaintiff** | **Sherman Act Antitrust, Texas Free** |
| | **Enterprise and Antitrust Act of 1983** |
| v. | **Intentional tort; Deceptive Trade** |
| | **Practices, Misrepresentation, &** |
| AMERICAN QUARTER HORSE | **Intentional Interference With Prospective** |
| ASSOCIATION | **Economic Advantage** |
| Mr. Peter J. Cofrancesco III | |
| Mr. Gene Graves; Don Treadway; | **Jury Trial Demanded** |
| Alex Ross; Ms. Johne Dobbs; | |
| Mr. Johnny Trotter; Mr. George Phillips; | Case number: |
| | |
| **Defendants** | Judge: Honorable |

Plaintiff, Edward Allan Buck, [Herein after referred to as the Plaintiff] alleges as follows:

JURISDICTION

1.      Jurisdiction is proper in this Court according to:  Jurisdiction 28 USC 1337

2.      Jurisdiction is proper in this Court according to the Sherman Act 15 USC 2

3.      Jurisdiction is proper in this Court as Plaintiff is a resident of the State of Utah

4.      Jurisdiction is proper in this Court as the Utah Quarter Horse Association is an

        Affiliate of the American Quarter Horse Association [AQHA] [Exhibit One]

5.      Defendants are named in their individual and official capacities.

6.      Defendant American Quarter Horse Association [AQHA] is a non-profit

        organization headquartered at 1600 Quarter Horse Drive, Amarillo, TX 79104

7.      Following Defendants are or were officers and/or agents of AQHA: Peter J.

[1]

Case: 2:13cv00965
Assigned To : Jenkins, Bruce S.
Assign. Date : 10/22/2013
Description: Buck v. American Quarter Ho
rse Association et al

Cofrancesco, Gene Phillips, Alex Ross, Johne Dobbs, Johnny Trotter Sr.,

George Phillips, Don Treadway, Charlie Hemphill

## NATURE OF COMPLAINT

9.    Plaintiff is prohibited by the AQHA and its agents, including but not limited to,

the named Defendants, from earning a living schooling owners and riders of

Quarter Horses for competitive venues sanctioned by the AQHA, Affiliates and

Alliance partners through their 'willful, intentional, knowing, malicious and

unconscionable' 'exclusionary conduct, which is seen in the warm up arenas and

the competitive arenas under their auspice.

10.   Plaintiff is prohibited from the acquisition of clients for the schooling of Quarter

Horses for competitions held under the auspice of the AQHA because the Plaintiff

will not use the *abusive techniques required, condoned and sanctioned by* AQHA

in the schooling of horses for competition.  Said abusive schooling techniques are

visually presented by the winning competitors in the warm up arenas and

competition arenas under the auspice of AQHA.  Trainers/riders who do not use

such techniques and actually present horses as prescribed by the descriptions

contained in the rules and regulations of AQHA do not win and are not even

placed.

11.   In other words, the Plaintiff cannot obtain clients for competitions held under the

auspice of AQHA, its affiliates and alliances because he will not 'force' the horse

into physical frames and gaits that are causing pain and discomfort to the horses

and which are categorically violations of the AQHA abuse rule the descriptions

[2]

contained with the AQHA Rule Book.  Frames and gaits created by the riders, trainers and *judges* of the AQHA through their 'exclusionary conduct' which means that in order to participate and win when under the auspice of AQHA, the horses must be in frames and moving in gaits that are categorically in violation of the AQHA Rule Book.

12.   The American Quarter Horse Association has affiliations with the following: Fifty-two (52) individual States of the United States, Twenty-seven (27) individual State racing associations, Four (4) Canadian Provincial racing associations, Thirty-four (34) International affiliates.

13.   There are also associations of individual competitive venues that are directly associated with the AQHA. From AQHA website: Meet AQHA's alliance partners.  For associations, national or international in scope, which predominately feature American Quarter Horses in their competitions. Association has fair rules and judging procedures that are widely recognized and accepted throughout the world, and where applicable, are substantially similar to AQHA's rules and regulations. Association has the ability to provide AQHA with points and/or money earnings on American Quarter Horses competing in their events: National Cutting Horse Association - National Reined Cow Horse Association - National Reining Horse Association - National Snaffle Bit Association - Palomino Horse Breeders Of America - International Buckskin Horse Association - United States Dressage Federation.

[3]

14.     The AQHA is a 'monopoly' as described under the Sherman Act. {*Abraham & Veneklasen Joint Venture; Abraham Equine, Inc.; & Jason Abraham v. American Quarter Horse Association 2:12-cv-103-J*} Memorandum and Order Regarding Defendant's Motion for Summary Judgment, 24th day of May, 2013 Honorable Judge Mary Lou Robinson, U. S. District Judge, Northern District of Texas, Amarillo Division. [Exhibit Two]

15.     AQHA Executive Committee and Judges Committee are directly responsible for the actions and lack of actions of the recognized judges for the AQHA as stated in the AQHA Competitive Horse Judging found on the AQHA website. [Exhibit Three]   The named Defendants of the Executive Committee and Judges Committee have a vested interest {*a personal interest in a state of affairs with an expectation of gain*} in the competitive venue under the auspice of the AQHA. The Defendants individually have a financial interest in the breeding and/or schooling and/or showing the American Quarter Horse in competitions sanctioned by the AQHA.  Many AQHA judges are breeders, owners and trainers. Therefore, the Defendants have a vested interest in partaking in actions or lack of actions which are by their nature are 'exclusionary conduct'. The Defendants, *independently and in a united group*, do 'willfully, knowingly, intentionally and with unconscionable gross negligence', allow the violations of the AQHA abuse rules which cause direct and proximate physical and emotional abuse to the horses.  Said violations are rewarded with awards, including financial re-numeration.

[4]

16.     Therefore, AQHA, its agents, affiliations and alliances, along with the named
        Defendants have a vested interest in partaking of 'exclusionary conduct' against
        owners, riders and trainers whom would try to compete their horse in non-abusive
        manners pursuant to the very clearly stipulated descriptions contained within the
        AQHA Rule Book. Please see AQHA Policy Position-Stewards-Judges [Exhibit
        Four] Please see AQHA's Statement of Position on Animal Welfare [Exhibit
        Five]

## FACTS

17.     Plaintiff, after viewing video showing horse abuse in the warm up arena at the
        Reichert Celebration in 2011, contacted the AQHA.  The letter dated October 10,
        2011 was an effort by the Plaintiff to bring attention to AQHA that there was an
        outrage swelling on the Internet, especially on horse related Facebook pages
        regarding the abuse seen in the video at Reichert Celebration.  The Plaintiff also
        offered to provide knowledge regarding equine biomechanics for judges and any
        other individuals that would allow individuals to realize the pain and discomfort
        being inflicted upon the horses. [Exhibit Six]

18.     Plaintiff on October 17, 2011 spoke by telephone with Charlie Hemphill's
        secretary and within minutes the Plaintiff received a telephone call from
        Executive Director of Judges Alex Ross.  His conversation was intent upon
        blaming the horses and avoided talking about the failure of the judges to enforce
        the rules and regulations of AQHA.

[6]

19.   Plaintiff, on Monday, October 17, 2011 7:13 PM sent an email to Charlie
      Hemphill email which is chemphill@aqha.org.  Exhibit Seven] Plaintiff in the
      letter addresses lack of communication from AQHA and addresses the bad
      judging and horse abuse. .

20.   Plaintiff, on October 27, 2011 sent a letter to the AQHA Executive Committee
      addressing the rule violations that result in horse abuse through causing pain and
      discomfort to the horses.  The letter also addresses the telephone call the Plaintiff
      received Oct 17, 2011 from Executive Director of Judges Alex Ross in which Mr.
      Ross blamed the horses for the bad frames and improper gaits while avoiding
      discussing the issue of the judges not enforcing the rules and regulations. [Exhibit
      Eight]

21.   Plaintiff on Feb. 13, 2012 sends Mr. Don Treadway copies of a handful of
      representative comments found through out the Internet regarding the failures by
      AQHA through their 'exclusionary conduct' violating the AQHA Rules and
      Regulations.  The Plaintiff never received acknowledgement of the letter. [Exhibit
      Nine]

22.   Plaintiff never hears from the AQHA in any manner of communications.  Plaintiff
      sends a letter on June 1, 2012 to Don Treadway regarding the failures of AQHA to
      remedy the illegal judging that propagates abuse of the Quarter Horse. [Exhibit
      Nine]

23.   January 2009 AQHA Animal Welfare Assurance Task Force released a laundry

[6]

list of its intentions. [Exhibit 11]  Unfortunately nothing is accomplished from then to today regarding the welfare of the Quarter Horse under the auspice of the AQHA.  The violations that existed then still exist today and no efforts have been put forth to bring about change.  Why?  Because the AQHA Executive Committee, the Task Force, the Judges Committee have individual vested interest in preventing anyone, through 'exclusionary conduct', from showing horses in the correct manner as prescribed by the Rules and Regulations.

24.    Plaintiff discovers that on October 2, 2013 the AQHA Animal Welfare Commission releases its welfare related recommendations, which appear to be not much different than the 2009 recommendations.  [Exhibit 12]  What are of most particular interest are the two very short paragraphs regarding judges.  Quote: "Commission members discussed a concern expressed by many exhibitors that AQHA judge are placing horses that aren't being shown according to AQHA rules."  However, the Commission then states the Judges Committee should address the concern.   That is like letting the foxes decided which fox gets which chicken.  Remember that the Judges Committee is comprised of individuals whom have an individual vested interest in using unconscionable 'exclusionary conduct' to prevent Quarter Horses from being shown pursuant to the Rules and Regulations. See AQHA Committee Guidelines for Judges Committee [Exhibit Thirteen]

25.    The AQHA Executive Committed approved the AQHA Animal Welfare

[7]

Commission Fines and Penalties and it is posted on the AQHA website. [Exhibit Fourteen] Plaintiff would like to bring it to this Court's attention that to date, AQHA, its agents, affiliates, alliances and Judges have not enforced the abuse rule, nor have they enforced any of the descriptive rules for certain competitive classes, such as Western Pleasure, Western Riding, Western Trail and all of their sub classes.

25. Plaintiff contends that as in 2009, the 2013 recommendations are fraudulent misrepresentations to members and non-members, and are simply publicity stunts in order to appease the members, non-members and the general public. These recommendations are simply due to the public outcry that began in earnest in 2011 and continues today. Nothing will change because the AQHA and its agents, including but not limited to, the AQHA Executive Committee, the Animal Welfare Commission and the Judging Committee have a vested interest in maintaining the status quo in the competitive venues by unconscionable exclusionary conduct in order to prevent Quarter Horses from being shown who's frames and gaits meet the stipulated descriptions contained in the Rules and Regulations.

Example: **SHW355. Halter Equipment**

**SHW355.1** For purposes of this rule, the term "Allowed Lip Chain" shall only mean a lip chain that:

**SHW355.1.1** has an unsecured keeper with at least two links of the chain outside

[8]

of halter before attachment of keeper or leather part of lead shank.**SHW355.1.2** is applied only over gum and not through mouth; and

**SHW355.1.3** with respect to the portion applied over the gum, is made up of chain links having a gauge of at least 4.0mm**SHW355.2** Stallions 1 year of age and older may be shown with an allowed lip chain in open and amateur divisions; mares and geldings 1 year of age and older may be shown in amateur and youth divisions with an allowed lip chain. All other types of chains that do not meet the definition of an allowed lip chain are prohibited.

**SHW355.4** Applying excessive pressure on or excessive jerking of an allowed lip chain is prohibited.

The AQHA Executive Committee put this rule back in even after it had been previously removed. Chains cause pain and discomfort to the horses simply by being placed in the position. There is absolutely no way for a judge or ring steward to have any idea of the amount of pressure being applied and chains can be jerked without anyone seeing the action take place. This clearly demonstrates the willingness of the named Defendants to inflict horse abuse in the name of fraudulent horsemanship.

26.    Why? Because the AQHA and its agents and certain members have through the past years and years gradually introduced horses that violated the Rules and Regulations and subsequently became winners, champions and grand champions. If AQHA and its agents, etc., actually enforced the Rules and Regulations then the majority of top national competitors would be eliminated from the competitions

[9]

'if they presented their horses in the manner they currently do' in the competitive arena. The AQHA is a monopoly controlled by individuals for the personal gains of the said individuals and their friends, etc., in the breeding, training and showing of the Quarter Horse.

27. AQHA unconscionably created, produced and made public, a video that teaches AQHA membership to violate the stipulated descriptions contained in the rules regarding how a horse shall appear and how the gaits shall appear. That video is a fraudulent misrepresentation and is deceptive.

28. To date of this filing, the Plaintiff has discovered only one substantive rule change published by AQHA. That rule change was predicated upon the videos of the warm up arena at the Reichert where draw reins were being used with curb bits, so now that is prohibited.

29. AQHA has published no documents that can prove the rules are being enforced. It is a material fact that actual physical evidence available will clearly demonstrate that nothing has changed in the competitive arena and that the rules and regulations are not being enforced.

30. In the letter dated October 27, 2011 the Plaintiff specifically clarified what, under law, constitutes abuse of a horse by the following:

"There is a legal standard for the definition of abuse to the horse. In 2004, the Washington State Supreme Court [should have read Washington State Appellate Court] held in 118 Wn. App. 730, State v. Zawistowski, that Webster's Third New

[10]

International Dictionary 1621 (1969)

definition of "*pain*" as "*a state of physical or mental lack of well-being or physical or mental uneasiness that ranges from mild discomfort or dull distress to acute often unbearable agony*" clearly defines abuse of a horse."

See Plaintiff's information page on horse abuse [Exhibit 15]

31.    While the State of Texas Penal Code 42.09 Cruelty to Livestock Animals states:

(a) A person commits an offense if the person intentionally or knowingly

(1) tortures a livestock animal

(b) In this section

(5) "Livestock animal" means

(A) a horse, pony, mule, donkey, or hinny

(7) "Torture" includes ***any act that causes unjustifiable pain or suffering***.

32.    These are just some of Youtube video links that demonstrate the abuse upon Quarter Horses that is condoned, sanctioned and taught by the American Quarter Horse Association.

http://youtu.be/DXz1C1obVpk

http://youtu.be/V7ryGEljjz0   Riechert Celebration warm up arena

http://youtu.be/0NzvxOG0yXo horses begin at 3:14 in the video

http://www.horsechannel.com/western-horse-training/western-perception-26601.aspx article on the bad judging

33.    Dictionary definitions of the following:

[11]

Abuse

1. a corrupt practice or custom

2. improper or excessive use or treatment

Veterinary Abuse

1. misuse, maltreatment or excessive use.

Torture

1. a: anguish of body or mind : agony b: something that causes agony or pain

2. the infliction of intense pain, to punish, coerce

34.  AQHA rules and regulations clearly stipulate how the horses' body and gaits should appear in certain classes.  Examples are 453B Western Riding, 454B Trail and 465B Western Pleasure.   These criteria are referenced by Defendant Alex Ross in a 2010 article entitled "Western Pleasure Defined" and in which in parts reads as follows:  **Showing Me The Way**

"As part of AQHA's ongoing mission to improve the understanding of Western Pleasure principles, the 2008 and 2009 AQHA Judges Conferences covered the topic; the goal was for judges to know and reward positive characteristics once exhibitors improved the presentation of their horses.

Training and education, for both judges and competitors, is needed to get everyone on the same page when it comes to the standards, and visuals can be invaluable for teaching what's correct.

[12]

In 2009, AQHA released an informational DVD called 'Showing to Win: Western Pleasure,' that provided clear examples of what's expected; it's been used in educational outreach for judges, and is available for purchase via their Web site. {This is the video in which Defendant Alex Ross shows and states clear methodologies that violate the rules and regulations and are abusive to the horse} What effect, if any, has it had on behaviors? Ross thinks the DVD has served its intended purpose.

"I feel the 'Showing to Win: Western Pleasure' DVD did a good job of educating our judges and exhibitors. We're now seeing horses that maintain greater forward motion at the walk, seldom demonstrating the 'interrupted walk' we saw for many years. I think exhibitors now understand the judges will call the 'interrupted walk' a break of gait," says Ross."

35.   This a great representation of the misleading misrepresentations that are made by the AQHA.  When one watches the video one will see that the horses are moving in frames and gaits that violate the Rules and Regulations, however, such is being touted as the correct manner of presenting the Quarter Horse.

36.   Plaintiff also claims that the AQHA violates its abuse rules and applies 'exclusionary conduct' through its failure to incorporate rule changes that would allow bitless competitors in all open classes and/or to compete against bitted competitors because of the declaration of special classes such as snaffle bit and hackamore [bitless] classes, as well as, stipulating particular bits to be used in specific classes.

[13]

37.     Plaintiff claims that AQHA consistently has allowed abuse of the horses through the gross negligent 'misuse' of bits in the horses mouths.  The visual evidence will demonstrate that AQHA, named Defendants and AQHA agents do routinely ignore rule:

441. PROHIBITED CONDUCT, (c) Inhumane Treatment

(1) **placing an object in a horse's mouth so as to cause undue discomfort or distress**; (8) **excessive jerking of reins**.

38.     Plaintiff schools client's horses with bits and without bits, however, the Plaintiff prefers to school and ride bitless in the Plaintiff's bitless bridle known as Spirit Bridle, which has been copied by numerous individuals and companies throughout the world.  The Plaintiff chooses to do so because of the freedom given to the horse, the results achieved and the horses' mouths are not hurt in any manner.  Therefore, besides the non-enforcement of the Rules and Regulations regarding the frame and gaits of the bitted competitive Quarter Horse, the bitting regulations by AQHA also prevent the Plaintiff from earning a living schooling and showing bitless and marketing the Spirit Bridle for competition.

## CAUSES OF ACTION

39.     Plaintiff herein incorporates by reference Paragraphs 1 through 38 of this Complaint.  Plaintiff seeks relief under the Sherman Antitrust Act (15 U.S.C. 1) and the Texas  Free Enterprise and Antitrust Act, Texas Business Commercial Code 15.04, which reflects the federal antitrust law, therefore no independent antitrust arguments arise.

[14]

Sherman Antitrust Act (15 U.S.C. 1)

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court."

and §2 of the Sherman Antitrust Act (15 U.S.C. §2) Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

40. AQHA, a Texas non-profit trade association, operates an organization earning monies from national and international competitive events and through direct membership fees. AQHA operates a trade association directly involved with the horse industry in Interstate Commerce as its agents, judges, stewards, travel across state borders in order to represent AQHA and earn fees in doing so, while riders and trainers travel across state borders in order to win awards and monies.

[15]

41.     AQHA operates a monopoly through conspiracy by 'exclusionary conduct' in the Quarter Horse competitive venue.  Wherein, the AQHA through its committees, including but not limited to the Executive Committee and the Judges Committee, to wit the individual members of each committee have individual vested interest in maintaining the violations of the AQHA abuse rule, as well as, numerous other individual rules and regulations.   "Where an organization is controlled by a group of competitors, it is considered to be a conspiracy of its members." *N. Tex. Specialty Physicians v. FTC, 528 F.3d 346,356 (5th Cir. 2008)*

42.     The AQHA Executive Committee and the Judges Committee are comprised of individuals with similar vested interests, therefore, the members of these committees do not operate independently nor does the Executive Committee exercise its fiduciary responsibilities to the members to mandate that the Judges Committee make sure the judges are abiding by and enforcing the horse abuse rule, as well as, 'all' the rules and regulations for competitive events.  Thus the evidence clearly demonstrates that AQHA is the conspiracy simply because the individuals who control AQHA are competitors with vested interests in using 'exclusionary conduct' to maintain the violations of the rules and regulations of the AQHA.

43.     The AQHA, through its committees, especially the Executive and Judges Committees, maintains a monopoly in Quarter Horse competitions through the efforts put forth to use 'exclusionary conduct' via the 'willful, intentional, knowing, malicious and unconscionable' acts of refusing to enforce the rules and

[16]

regulations of the AQHA.  This is done in order to exclude competitors who would choose to compete their horses in the manners in which the horses would be presented meeting the stipulated descriptions contained in the AQHA Rules and Regulations.  *United States v. E. I. duPont de Nemours & Co., 351 U.S 377, 391 (1956)*

44.     Plaintiff herein incorporates by reference Paragraphs 1 through 43 of this Complaint.  Plaintiff seeks relief as a direct result of the Defendants unconscionable intentional tort that they willfully choose to participate in and inflict upon the Plaintiff.  First element, the named Defendants were and are under a legal duty to act in manners that meet the mission statement, policy statement, statement on animal welfare, as well as the rules and regulations of the AQHA. Second element,  the Defendants breached their duty by failing to conform their behavior accordingly. Third element, the Plaintiff can prove that he suffered injury or loss as a direct result of the Defendants breach of duty.

45.     Plaintiff herein incorporates by reference Paragraphs 1 through 44 of this Complaint.   Plaintiff seeks relief for Misrepresentation and Deceptive Trade Practices pursuant to Texas Business and Commerce Code, Title 2, Competition and Trade Practices, Subchapter E, Deceptive Trade Practices and Consumer Protection Sec. 17.41.

46.     Sec. 17.45. DEFINITIONS.

        (5) "Unconscionable action or course of action" means an act or practice which, to a consumer's detriment, takes advantage of the lack of

[17]

knowledge, ability, experience, or capacity of the consumer to a grossly

unfair degree (9) "Knowingly" means actual awareness, at the time of the

act or practice complained of, of the falsity, deception, or unfairness of the

act or practice giving rise to the consumer's claim or, in an action brought

under Subdivision (2) of Subsection (a) of Section 17.50, actual awareness

of the act, practice, condition, defect, or failure constituting the breach of

warranty, but actual awareness may be inferred where objective

manifestations indicate that a person acted with actual awareness.

(13) "Intentionally" means actual awareness of the falsity, deception, or

unfairness of the act or practice, or the condition, defect, or failure

constituting a breach of warranty giving rise to the consumer's claim,

coupled with the specific intent that the consumer act in detrimental

reliance on the falsity or deception or in detrimental ignorance of the

unfairness. Intention may be inferred from objective manifestations that

indicate that the person acted intentionally or from facts showing that a

defendant acted with flagrant disregard of prudent and fair business

practices to the extent that the defendant should be treated as having acted

intentionally.

47.       Sec. 17.46. DECEPTIVE TRADE PRACTICES UNLAWFUL. (a) False,

misleading, or deceptive acts or practices in the conduct of any trade or

commerce are hereby declared unlawful and are subject to action by the

consumer protection division under Sections 17.47, 17.58, 17.60, and

[18]

17.61 of this code (b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts: (2) *causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services*

48. Plaintiff herein incorporates by reference Paragraphs 1 through 47 in this Complaint. Plaintiff seeks relief pursuant to the intentional interference with economic perspective advantage of the Plaintiff. The named Defendants have and are committing intentional interference with prospective economic advantage of the Plaintiff by the Defendants actions and lack of actions which constitute 'exclusionary conduct' as a result of 'willfully, intentionally, knowingly, maliciously and unconscionably" refusing to enforce the rules and regulations of AQHA. This is being done in order to maintain the ability of owners, trainers and riders whom are friends and cohorts in the abusive schooling and showing of the Quarter Horse to compete and win. The unconscionable actions and lack of actions by the named Defendants interfere with the Plaintiff's ability to earn a living by acquisition of clients for the schooling and competition of the Quarter Horse under the stipulated rules and regulations of the AQHA.

## CONCLUSION

49. The evidence to be provided at time of trial will clearly demonstrate that the Plaintiff and any other individuals who would choose to compete and expect to win in any venue associated with the AQHA, would have to school and ride their

[19]

horses in abusive methods, which are in direct violations of AQHA Rules and Regulations and which contradict this from AQHA: **designed to create a fair and unbiased competition venue for owners, trainers and riders**

50.     Due to the lack of States' animal abuse laws being equal, especially regarding the horse, the Plaintiff took upon the task of re-writing the Federal Horse Protection Act, which currently only provides minimal protection to gaited horses.  Plaintiff realizes the need to protect all horses and thus has done a re-write and is trying to have it sponsored in Congress. [Exhibit 16]

51.     The evidence will clearly demonstrate that the AQHA and named Defendants are acting in a cohesive conspiracy:

>       1. not enforce the horse abuse Rule.

>       2. not to enforce the clearly stipulated descriptions of how the horse shall appear in its body frame and in its performance of gaits.

>       3. not to neither create nor implement any substantive changes through the Animal Welfare Commission.

>       4. not to top the condoning, sanctioning and teaching, of abusive schooling and riding of the competitive Quarter Horse, through gross negligence

>       5. to avoid any form of communication with the Plaintiff in order to prevent the implementation of enforcement of the rules and regulations.

[20]

6. to intentionally interfere with, to impede and prevent the Plaintiff from earning a living from the schooling and competing of the Quarter Horse pursuant to the clearly defined and stipulated rules and regulations set forth by AQHA.

## **PRAYER FOR RELIEF**

52.     Whereas, the named Defendants have and continue to 'willfully, intentionally, knowingly and maliciously' condone, sanction, and teach abusive schooling and competitive riding techniques in violation of the AQHA rules and:,

53.     Whereas, the gross negligent actions and omissions by the named Defendants have committed and continue to commit antitrust violations, deceptive trade practices, fraud and misrepresentation and intentional interference with economic prospective advantage upon the Plaintiff

54.     Plaintiff hereby asks for actual damages in the amounts of $1,500,000.00 per named Defendant as individuals and as agents of the Defendant American Quarter Horse Association.

55.     Plaintiff hereby asks for punitive damages in the amounts of $1,500,000.00 per named Defendant as individuals and as agents of the Defendant American Quarter Horse Association.

Dated this 21st day of October, 2013

_____

Edward Allan Buck, Pro se

[21]